UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ADRIAN HUFF, as Chairman of the Board of Trustees of
TEAMSTERS LOCAL 445 FREIGHT DIVISION
PENSION FUND and TEAMSTERS LOCAL 445
EDUCATION and TRAINING FUND,

                                     Plaintiff,

                                                                       07 – Civ. – 6033 (KMK)

   -against-

WATSON SERVICES, INC.,

                                     Defendant.
-----------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

                                                             **KREITZMAN, MORTENSEN & BORDEN**
                                                             Attorneys for **WATSON SERVICES INC.**
                                                             100 Wall Street, 23rd Floor
                                                             New York, New York 10005
                                                              (212) 252-9050

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ iv

PRELIMINARY STATEMENT .................................................................................. 1

    A.    Statement of Facts ........................................................................................ 2

    B.    The Applicable Legal Standards ................................................................. 3

ARGUMENT ................................................................................................................ 5

POINT I

PLAINTIFF'S ERISA CLAIMS MUST BE DISMISSED BECAUSE DEFENDANT WAS NOT RESPONSIBLE FOR ANY "UNPAID CONTRIBUTIONS" TO THE FUNDS AT THE TIME THE INSTANT SUIT WAS FILED. .............................................................................................................. 5

POINT II

ASSUMING, *ARGUENDO*, PLAINTIFF'S SECTION 1145 CLAIMS ARE NOT DISMISSED, PLAINTIFF IS NOT ENTITLED TO STATUTORY LIQUIDATED DAMAGES (i.e., "LATE PAYMENT CHARGES") BECAUSE DEFENDANT WAS NOT RESPONSIBLE FOR ANY "UNPAID CONTRIBUTIONS" TO THE FUNDS AT THE TIME THE INSTANT SUIT WAS FILED. .............................................................................................................. 6

POINT III

PLAINTIFF IS NOT ENTITLED TO CONTRACTUAL "LATE PAYMENT CHARGES" BECAUSE THERE EXISTS NO CONTRACT PROVISION REQUIRING DEFENDANT TO PAY THEM. ................................................... 9

    A.    The collective-bargaining agreement (CBA) between Defendant WSI and Local 445 does not expressly provide for "late payment charges" or liquidated damages for contributions made to the Pension Fund. .......... 9

B. <u>The Restated Agreement and Declaration of Trust fails to provide for assessment of "late payment charges" or liquidated damages in the absence of an audit.</u>

10

C. <u>To the extent that the 1988 Amended Restatement's language is unclear or ambiguous regarding the assessment of liquidated damages, the language should be construed less favorably to Plaintiff who is responsible for the language.</u>

12

CONCLUSION                                                                           14

# TABLE OF AUTHORITIES

**Statutes**

| | |
|---|---|
| 29 U.S.C. §185 | 1 |
| 29 U.S.C. §1132(g)(2)(A) | 8 |
| 29 U.S.C. §1132(g)(2)(C) | 6, 8 |
| 29 U.S.C. §1145 | 1, 5 |
| Fed. R. Civ. P. 56 | 1, 3 |

**Cases**

| | |
|---|---|
| Anderson v. Liberty Lobby, 477 U.S. 242 (1986) | 3 |
| Bennett v. Machined Metals Co., 591 F. Supp. 600 (E.D. Pa. 1984) | 6, 8 |
| Board of Trustees of Local 41, I.B.E.W. Health Fund et al. v. Zacher, 771 F. Supp 1323 (W.D.N.Y. 1991) | 6 |
| Carpenters and Joiners Welfare Fund v. Gittleman Corp., 857 F.2d 476, 478 (8th Cir. 1988) | 6, 7 |
| Carpenters, etc. Health Benefit Fund v. Ryan Const., 767 F.2d 1170 (5th Cir. 1985) | 6, 7, 8 |
| Celotex Corp. v. Catrett, 477 U.S. 317 (1986) | 3 |
| Farrell v. Metropolitan Relocations, Inc., No. 95 Civ. 0557 (CPS), 1996 U.S. Dist. LEXIS 20313 (E.D.N.Y. Jan. 19, 1996) | 6, 7 |
| Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219 (2d Cir. 1994) | 3 |
| Gilles v. Burton Constr. Co., 736 F.2d 1142 (7th Cir. 1984) | 7 |
| Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mechanical Contractors, Inc., 875 F.2d 212 (9th Cir. 1989) | 7 |
| Iron Workers District Council of Western New York Welfare & Pension Funds et al. v. Hudson Steel Fabricators, 68 F.3d 1502 (2d Cir. 1995) | 5, 7 |

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)   3

New York State Teamsters Conference Pension and Retirement Fund
   v. Boening Brothers, Inc., 92 F.3d 127 (2d Cir. 1996)   5

Northwest Admrs., Inc. v. B.V. & B.R., Inc., 813 F.2d 223 (9th Cir. 1987)   12

N.Y.S. Teamsters Conf. Pens. & Retir. Fund v.
   Syracuse Movers, Inc., No. 5:02 Civ. 00733 (NPM),
   2004 U.S. Dist. LEXIS 25692 (N.D.N.Y. Nov. 22, 2004)   11

Operating Engineers Local 139 Health Benefit Fund v.
   Gustafson Constr. Corp., 258 F.3d 645 (7th Cir. 2001)   6, 8

Parkhurst v. Armstrong Steel Erectors, Inc., 901 F.2d 796 (9th Cir. 1990)   6, 8

Southeastern Carpenters & Millwrights Health Trust
   v. M&M Constr., No. 2:04-CV-483-F,
   2005 U.S. Dist. LEXIS 37761 (M.D. Ala. June 2, 2005)   6, 8

Trustees of the Building Service 32B-J Health Fund et al. v.
   Triangle Services, Inc., No. 05 Civ. 2546 (NRB),
   2006 U.S. Dist. LEXIS 85612 (S.D.N.Y., Nov. 21, 2006)   6, 7

United States v. Seckinger, 397 U.S. 203 (1970)   12

Case 7:07-cv-06033-KMK   Document 14-17   Filed 04/21/2008   Page 5 of 19

v

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ADRIAN HUFF, as Chairman of the Board of Trustees of
TEAMSTERS LOCAL 445 FREIGHT DIVISION
PENSION FUND and TEAMSTERS LOCAL 445
EDUCATION and TRAINING FUND,

                          Plaintiff,

                                                                        07 – Civ. – 6033 (KMK)

-against-

WATSON SERVICES, INC.,

                          Defendant.
------------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

        Defendant **WATSON SERVICES, INC.** (hereafter "**WSI**" or "**Defendant**") submits this Memorandum of Law in support of its Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on Plaintiff's claims under Section 515 of the Employee Retirement Insurance Security Act ("**ERISA**"), 29 U.S.C. §1145 ("**Section 515**") and Section 301 of the Labor Management Relations Act ("**LMRA**"), 29 U.S.C. §185, because Plaintiff's evidence is insufficient as a matter of law to entitle them to relief thereunder.

        This case is an unfortunate waste of the Court's time and resources. Almost a year prior to the commencement of this lawsuit, WSI paid the Plaintiff's Pension Fund every penny of the monthly contributions required by its collective-bargaining agreement. Defendant WSI has repeatedly explained to Plaintiff in detail – both in writing and in face-to-face meetings – why Plaintiff has no basis for demanding additional monies. Plaintiff has admitted the errors in the wording of its Trust Agreement that bar recovery here, and asserted the Fund's intention to correct them prospectively.

1

Still, without a legal leg to stand upon, and armed only with its own drafting mistakes, the Pension Fund, by its Chairman, brings this suit against Defendant. This is plain and simple, a "money grab" – the worst example of frivolous and abusive litigation, filed solely to coerce money from Defendant under the duress of mounting legal expenses. This case should be dismissed without further delay, and Plaintiff should be made to reimburse Defendant for the attorneys' fees and other costs incurred in its defense.

**A.    Statement of Facts**

WSI has been, at all times relevant hereto, party to a collective-bargaining agreement (hereinafter "**CBA**") with Teamsters Local 445 (hereinafter "**Local 445**"). Rule 56.1 Statement of Material Facts ¶2.[1] The CBA, effective by its terms October 1, 2003 through September 30, 2006, required Defendant WSI to make monthly contributions to the Teamsters Local 445 Freight Division Pension Fund (hereinafter "**Pension Fund**"). SOF ¶9. The Pension Fund is a multi-employer employee pension benefit plan, established by a Declaration of Trust. SOF ¶¶3, 5. WSI agreed in the CBA to be bound by the Pension Fund's Agreement and Declaration of Trust. SOF ¶ 12. In 1988, the Pension Fund Trustees modified the language of Section 14 of the Restated Agreement and Declaration of Trust by the adoption of Amendments (hereinafter "**1988 Amended Restatement**"). SOF ¶5.

It is undisputed that for the period June 2005 through July 2006, WSI paid every penny of the monthly Pension Fund contributions required by the CBA. SOF ¶17. It is also undisputed that WSI made these payments late – i.e., after the 15th of the subsequent calendar month. Id. Nevertheless, it is also undisputed that by the end of September 2006, Defendant WSI was entirely current in its required monthly contributions to the Pension Fund, and has remained so through the present. SOF ¶¶18, 19.

---

[1]    Citation to the Rule 56.1 Statement of Material Facts shall be made herein, "SOF ¶ _"; to the Declaration of Seth H. Borden as "Borden __" and "Borden Exh. __"; and, the Complaint as "Compl. __."

-3-

Nevertheless, Plaintiff has repeatedly demanded that Defendant WSI pay the Pension Fund "late payment charges" in the amount of approximately $15,911.53.[2] SOF ¶¶20-27. Nine (9) months after Defendant WSI had paid in full any outstanding monthly contributions to the Pension Fund, Plaintiff commenced the instant action solely to collect these purported "late payment charges." SOF ¶27.

**B.     The Applicable Legal Standards**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247-50 (1986). A fact is material only if, based on that fact, a reasonable jury could find in favor of the nonmoving party. Anderson, 477 U.S. at 248. The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. See Anderson, 477 U.S. at 255. To defeat summary judgment, the non-movant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. See Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994).

---

[2]     Plaintiff initially filed suit demanding payment of fees to the Local 445 Freight Division Education and Training Fund (hereinafter **"E&T Fund"**) as well. Plaintiff has since conceded that WSI did, in fact, pay all contributions and fees owed to the E&T Fund, and Defendant assumes that Plaintiff intends to withdraw those claims accordingly. See Borden Declaration in Support Exh. 6 (Plaintiff's Admissions) at ¶¶21-26, Exh. 11.

In the instant case, summary judgment should be granted, unless Plaintiff can come forward with specific, admissible and probative facts demonstrating the existence of a "genuine issue" of "material fact" concerning (1) whether Defendant owed any "unpaid contributions" to the Pension Fund at the time the suit was filed; or, (2) whether Section 14 of the 1988 Amended Restatement provides a contractual right to assess "late payment charges."

Plaintiff cannot meet his burden. Here, Plaintiff *admits* Defendant owed no "unpaid contributions" at commencement of the suit; and, *admits* that Plaintiff's Trustees were responsible for any mistaken contract language which fails to provide for the assessment of "late payment charges" or liquidated damages under the facts at bar.

## ARGUMENT

### POINT I

### PLAINTIFF'S ERISA CLAIMS MUST BE DISMISSED BECAUSE DEFENDANT WAS NOT RESPONSIBLE FOR ANY "UNPAID CONTRIBUTIONS" TO THE FUNDS AT THE TIME THE INSTANT SUIT WAS FILED.

A suit brought under Section 515 of ERISA, 29 U.S.C. § 1145, to enforce an employer's obligations to pay contributions may not be commenced in the absence of "unpaid contributions." Iron Workers District Council of Western New York Welfare & Pension Funds et al. v. Hudson Steel Fabricators, 68 F.3d 1502, 1507 (2d Cir. 1995); see also New York State Teamsters Conference Pension and Retirement Fund v. Boening Brothers, Inc., 92 F.3d 127, 135 (2d Cir. 1996). In the instant case, the Plaintiff *admits* that at the time the suit was commenced, Defendant WSI had made all monthly "contributions" for which it was responsible. Compl. 19; Borden Declaration Exh. 6 (Plaintiff's Admissions) at ¶¶20, 21. ("To the extent that 'unpaid contributions' refers to required monthly payments, Plaintiff admits" that Defendant had made all its required contributions at the time the lawsuit was commenced.)

Accordingly, Plaintiff's ERISA claims should be dismissed in their entirety.

### POINT II

### ASSUMING, *ARGUENDO*, PLAINTIFF'S SECTION 1145 CLAIMS ARE NOT DISMISSED, PLAINTIFF IS NOT ENTITLED TO STATUTORY LIQUIDATED DAMAGES (i.e., "LATE PAYMENT CHARGES") BECAUSE DEFENDANT WAS NOT RESPONSIBLE FOR ANY "UNPAID CONTRIBUTIONS" TO THE FUNDS AT THE TIME THE INSTANT SUIT WAS FILED.

An ERISA plaintiff may not recover statutory damages[3] pursuant to Section 502(g)(2)(c), 29 U.S.C. §1132(g)(2)(C), for late contributions to employee pension trust funds where the contributions, although delinquent, have been paid prior to the commencement of suit. See Trustees of the Building Service 32B-J Health Fund et al. v. Triangle Services, Inc., No. 05 Civ. 2546 (NRB), 2006 U.S. Dist. LEXIS 85612 at *12 (S.D.N.Y., Nov. 21, 2006) ("…plaintiff may not recover interest or liquidated damages based on contributions paid in full at the start of this lawsuit…."); Farrell v. Metropolitan Relocations, Inc., No. 95 Civ. 0557 (CPS), 1996 U.S. Dist. LEXIS 20313 at *14-15 (E.D.N.Y. Jan. 19, 1996) (quoting Carpenters and Joiners Welfare Fund v. Gittleman Corp., 857 F.2d 476, 478 (8th Cir. 1988)); Board of Trustees of Local 41, I.B.E.W. Health Fund et al. v. Zacher, 771 F. Supp 1323, 1332 (W.D.N.Y. 1991); see also Operating Engineers Local 139 Health Benefit Fund v. Gustafson Constr. Corp., 258 F.3d 645, 654 (7th Cir. 2001); Parkhurst v. Armstrong Steel Erectors, Inc., 901 F.2d 796 (9th Cir. 1990); Carpenters, etc. Health Benefit Fund v. Ryan Const., 767 F.2d 1170 (5th Cir. 1985); Southeastern Carpenters & Millwrights Health Trust v. M&M Constr., 2:04-CV-483-F, 2005 U.S. Dist. LEXIS 37761 at *7-8 (M.D. Ala. June 2, 2005); Bennett v. Machined Metals Co., 591 F. Supp. 600, 603-04 (E.D. Pa. 1984).

The Second Circuit Court of Appeals has not had occasion to affirm the Southern, Western or Eastern District's holdings squarely on this point. There are no reported decisions

---

[3] Section 502(g)(2)(C) provides for the assessment of "liquidated damages provided for under the plan in an amount not in excess of 20 percent … of the [employer's "unpaid contributions"]. The "late payment charges" demanded by Plaintiff on behalf of the Pension Fund are in the nature of "liquidated damages," as that term is used in Section 502(g)(2) of ERISA. The words "late payment charges" appear nowhere in the CBA or Trust Fund documents with respect to the Defendant's Pension Fund obligations, nor anywhere in the statute. That terminology exists only in the Funds' insistence that the Defendant pay them.

within the Circuit at any level, however, which hold otherwise. Moreover, in <u>Iron Workers District Council of Western New York Welfare & Pension Funds et al. v. Hudson Steel Fabricators</u>, 68 F.3d 1502 (2d Cir. 1995), the Court of Appeals for the Second Circuit appeared to accept the reasoning of the Fifth, Seventh, Eighth and Ninth Circuit Courts of Appeal which hold that Section 502(g)(2) remedies are unavailable when contributions are paid in full prior to the commencement of suit. <u>Id.</u> at 1506-07. In <u>Iron Workers</u>, the employer argued that it was not liable for statutory liquidated damages because it had paid all delinquent contributions *after suit* was filed, but *before* judgment was entered. <u>Id.</u> at 1505. The court rejected this argument. In so doing, the court distinguished the case from the authorities in numerous other circuits that properly hold Section 502's liquidated damages provision does not apply when all contributions are paid *before suit* is filed. <u>Id.</u> at 1506-07 (citing <u>Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mechanical Contractors, Inc.</u>, 875 F.2d 212, 215 (9th Cir. 1989), <u>Carpenters & Joiners v. Gittelman Corp.</u>, 857 F.2d 476, 478 (8th Cir. 1988), <u>Carpenters, etc. Health Benefit Fund v. Ryan Const.</u>, 767 F.2d 1170, 1171 (5th Cir. 1985), and <u>Gilles v. Burton Constr. Co.</u>, 736 F.2d 1142, 1146 (7th Cir. 1984)).

Regarding the circumstances under which it is appropriate to grant Section 502(g)(2)(c) liquidated damages, the Second Circuit stated:

> ...the action must be one to enforce the obligations to pay contributions under § 1145, and therefore no such suit can be commenced in the absence of unpaid contributions....

<u>Iron Workers</u>, 68 F.3d at 1507.

It is well settled that as used in Section 502(g)(2), "unpaid contributions" means "contributions unpaid at the time suit was filed, rather than contributions which were delinquent for some time but were paid up before suit was filed." <u>Farrell v. Metropolitan Relocations, Inc.</u>, No. 95 Civ. 0557 (CPS), 1996 U.S. Dist. LEXIS 20313 at *14-15 (E.D.N.Y. Jan. 19, 1996) (quoting <u>Carpenters and Joiners Welfare Fund v. Gittleman Corp.</u>, 857 F.2d 476, 478 (8th Cir. 1988)); see <u>Trustees of the Building Service 32B-J Health Fund et al. v. Triangle Services, Inc.</u>, Case No. 05 Civ. 2546 (NRB), 2006 U.S. Dist. LEXIS 85612 at *12 (S.D.N.Y., Nov. 21, 2006);

see also Operating Engineers Local 139 Health Benefit Fund v. Gustafson Constr. Corp., 258 F.3d 645, 654 (7th Cir. 2001); Parkhurst v. Armstrong Steel Erectors, Inc., 901 F.2d 796 (9th Cir. 1990); Carpenters, etc. Health Benefit Fund v. Ryan Const., 767 F.2d 1170 (5th Cir. 1985); Southeastern Carpenters & Millwrights Health Trust v. M&M Constr., 2:04-CV-483-F, 2005 U.S. Dist. LEXIS 37761 at *7-8 (M.D. Ala. June 2, 2005); Bennett v. Machined Metals Co., 591 F. Supp. 600, 603-04 (E.D. Pa. 1984).[4]

In the instant case, the Plaintiff *admits* that at the time the suit was commenced, there were no "unpaid contributions" – i.e., that WSI had made all monthly Fund contributions for which it was responsible. Compl. 19; Borden Exh. 6 (Plaintiff's Admissions) at ¶¶20, 21 ("To the extent that 'unpaid contributions' refers to required monthly payments, Plaintiff admits" that Defendant had made all its required contributions at the time the lawsuit was commenced.) Accordingly, Plaintiff is not entitled to the additional statutory remedies set forth in Section 502(g) -- including any "liquidated damages provided for under the plan...." 29 U.S.C. § 1132(g)(2).

By reason of the foregoing, the Court should grant summary judgment for Defendant, dismissing Plaintiff's ERISA claims in their entirety.

---

[4] Logic and plain meaning drive this conclusion. Section 502(g)(2)(C)(ii) specifically provides for an award of:

> liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under [502(g)(2)](A)....

Section 502(g)(2)(A) refers simply to "the unpaid contributions." Thus, if a court finds there are no "unpaid contributions" – as admitted by Plaintiff herein – it is obvious that there can be no liquidated damages awarded as twenty percent of nothing is nothing.

## POINT III

## PLAINTIFF IS NOT ENTITLED TO CONTRACTUAL "LATE PAYMENT CHARGES" BECAUSE THERE EXISTS NO CONTRACT PROVISION REQUIRING DEFENDANT TO PAY THEM.

**A.  The collective-bargaining agreement (CBA) between Defendant WSI and Local 445 does not expressly provide for "late payment charges" or liquidated damages for contributions made to the Pension Fund.**

Article 23 of the CBA makes no express reference to "late payment charges" or payment of liquidated damages for tardy contributions. SOF ¶11. The provision states only:

> The contributions provided for above shall be transmitted by the 15th of the month following the calendar month for which contributions are payable.

SOF ¶10; Borden Exh. 3-A. In fact, the CBA provides no consequences whatsoever for the late payment of Pension Fund contributions. Borden Exh. 3-A.

By contrast, Schedule "B" of the Appendix to the CBA, pertaining to the E&T Fund, *does* state rather explicitly:

> E.  Payments will be made monthly to the Fund by check, payable to Teamsters Local 445 Education and Training Fund. The Employer shall remit and pay over such contributions by the 15th day of the following month for the preceding month.
>
>     \* \* \*
>
> G.  *In the event of failure by the Employer to make contributions required as provided* for in this Article, the Employer shall be responsible for the payment of all legal fees, and monies owed the Fund, with a *ten percent (10%) late penalty charge for such delinquency on the amount of unpaid contributions due.*

See Borden Exh. 3-A at 16 (emphasis supplied). When WSI and Local 445 wanted to provide for late penalty charges under certain specific circumstances, they certainly knew how to do so in clear and unambiguous language.[5] Their failure to provide similarly clear and unambiguous language in Article 23 of the CBA suggests there was no agreement regarding the assessment of "late payment charges" for Pension Fund contributions.

### B. The Restated Agreement and Declaration of Trust fails to provide for assessment of "late payment charges" or liquidated damages in the absence of an audit.

Similarly, the 1988 Amended Restatement makes no reference to "late payment charges" at all. Instead, the 1988 Amended Restatement provides only for the assessment of liquidated damages under limited circumstances. Section 14 of the 1988 Amended Restatement, provides:

> In addition to any remedies which the Union may have by virtue of any provisions in any Collective Bargaining Agreement with the employer to enforce the payment of the employer contributions to the Fund, *the trustees shall have the power to require any employer who does not make proper and timely contributions as required by its Collective Bargaining Agreement to pay as follows:*
>
> *(a)   any expenses incurred in the auditing of such employer's books and records.*
>
> \* \* \*
>
> *(c)   In any matter under subsection (a)* the Employer shall pay to the Fund –
>
>    (i)   the unpaid contributions,
>    (ii)  liquidated damages equal to the greater of –

---

[5] Back in the summer of 2006, when the Funds advised WSI of its delinquencies to the E&T Fund and assessed a ten percent "late payment charge" on those delinquencies, Defendant reviewed the CBA language and promptly paid both the delinquencies *and* the contractual late charges.

>       (A)   the amount of interest at the rate of 10%
>       charged on the unpaid contributions, or
>       (B)   up to 20% of the unpaid contributions....

SOF ¶15; Borden Exh. 3-C. at 2-3  Under this express contractual language, the Funds may assess liquidated damages *only* when they find "unpaid contributions" after incurring the expense of "auditing [the] employer's books and records," ***pursuant to subsection (a)***. No such audit was requested or conducted in the instant case. Therefore, subsections (a) and (c) of Section 14 are inapplicable.

Plaintiff suggests that Section 14 is ambiguous, and asserts that Defendant's interpretation does not make sense – i.e., that it is unreasonable to assume that Fund Trustees would include an assessment of liquidated damages as a remedy following an audit. Yet there are other Teamsters Funds who have included just such a provision in their Trust Agreements. In N.Y.S. Teamsters Conf. Pens. & Retir. Fund v. Syracuse Movers, Inc., No. 5:02 Civ. 00733 (NPM), 2004 U.S. Dist. LEXIS 25692, (N.D.N.Y. Nov. 22, 2004), the District Court noted that by the participation agreements at issue:

> ...Syracuse further agreed that the Funds could audit its records and that, ***in the event an audit disclosed that contributions were not properly made***, Syracuse would be liable for all contribution delinquencies, ***liquidated damages at ten percent of the delinquency amount***, audit fees, reasonable attorney's fees and court costs

2004 U.S. Dist. LEXIS 25692 at *8 (emphasis supplied).[6] Thus, it is entirely reasonable for a Trust Fund to condition the assessment of "late payment charges" on the conduct of an audit – as Plaintiff did here. Accordingly, and insofar as the Pension Fund herein conducted no such audit, Plaintiff is not entitled to assess "late payment charges" or liquidated damages pursuant to Section 14 of the Restated Agreement and Declaration of Trust.

---

[6]  Ironically, Plaintiff himself has cited this case, involving fellow Teamster Funds, as evidence that the provision present in *both* cases is somehow unreasonable.

    **C.**    <u>**To the extent that the 1988 Amended Restatement's language is unclear or ambiguous regarding the assessment of liquidated damages, the language should be construed less favorably to Plaintiff who is responsible for the language.**</u>

To the extent that Plaintiff suggests that the language of the Trust Agreement is ambiguous, the doctrine of *contra proferentem* provides that:

> as between two reasonable and practical constructions of an ambiguous contractual provision… the provision should be construed less favorably to that party which selected the contractual language…

<u>United States v. Seckinger</u>, 397 U.S. 203, 216 (1970); see also <u>Northwest Admrs., Inc. v. B.V. & B.R., Inc.</u>, 813 F.2d 223, 226 (9th Cir. 1987) (noting that a court "could consider application of the doctrine of *contra proferentem* [in an ERISA case] if it finds that [the Fund Trustees were] directly or indirectly responsible for the disputed language….")

In the instant case, Plaintiff sues on behalf of the Trustees who are directly responsible for the language at issue. By this lawsuit, the Trustees seek to have arguably ambiguous language, that they have drafted and maintained, construed against Defendant to force payment of gratuitous sums of money to the Pension Fund. It is axiomatic that the Pension Fund and its Trustees must bear the consequences of their sloppiness – not Defendant.

Moreover, by adopting this language in 1988, the Trustees actually *chose* to modify clear and unambiguous language, which might have provided the result they seek here. Section 14 of the 1975 Restatement read, in relevant part:

> In addition to any remedies which the Union may have by virtue of any provisions in any Collective Bargaining Agreement with the employer to enforce the payment of the employer contributions to the Fund, the Trustees shall have the power *to require any employer who does not make proper and timely contributions as*

> ***required by its Collective Bargaining Agreement to pay*** in addition to such contributions:
>
> (a) ***Interest per annum on the amount due*** at the best interest rate charged by the Bankers Trust Company to substantial and responsible commercial borrowers as of the date of the employer's default in contributions to the Fund provided, however, that such interest shall not be less than 6% per annum.
>
> (b) Any expenses incurred in the auditing of such employer's books and records.
>
> (c) Where court action has been instituted, attorney's fees.

SOF ¶14; Borden Exh. 3-C at 16-17. This earlier language was clear: *if* an employer does not make timely contributions, *then* it may be "required" to pay interest (of at least 6%). Notably, the same "auditing" expense language was also used in the 1975 Restatement as an additional direct consequence of untimely payment. The Trustees' right to assess interest, however, makes no reference to that subsection. It is rather tied only to the conditions specified in the main paragraph – i.e., when an employer does not make "proper and timely contributions."

Had the Funds intended to maintain this prerogative, they could have simply left the language as it was, or even supplemented it by adding additional consequences in subsequent subsections. But they did not do so. Instead, in the 1988 amendments, they modified the language substantially and limited the assessment of liquidated damages to matters contemplated by the new "subsection (a)" – the auditing of the employer's books.

As there is no contractual basis for the assessment of "late payment charges" or liquidated damages, the Court should grant summary judgment for Defendant, dismissing Plaintiff's claims in their entirety.

## CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that its Motion for Summary Judgment be granted in its entirety. Defendant further requests that, due to the baseless and abusive nature of the lawsuit filed by Plaintiff, that the Court issue an Order requiring Plaintiff to reimburse Defendant for the costs of defending this Action, including without limitation, payment of reasonable attorneys' fees.

Dated: New York, New York
       March 11, 2008

                                 Respectfully submitted,

                        **KREITZMAN, MORTENSEN & BORDEN**

                              Attorneys for **WATSON SERVICES INC.**
                              100 Wall Street, 23rd Floor
                              New York, New York 10005
                              (212) 252-9050

                BY: _____
                      Seth Borden (SB-4583)