UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ADRIAN HUFF, as Chairman of the Board of
Trustees of Teamsters Local 445 Freight Division
Pension Fund and Teamsters Local 445 Education and
Training Fund,

                     Plaintiff,

    -v-

WATSON SERVICES, INC.,

                   Defendant.

Case No. 07-CV-6033 (KMK)

OPINION AND ORDER

---

Appearances:

William D. Frumkin, Esq.
Scott R. Abraham, Esq.
Sapir & Frumkin LLP
White Plains, NY
*Counsel for Plaintiff*

Seth H. Borden, Esq.
McKenna Long & Aldridge
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

       Adrian Huff ("Plaintiff"), as Chairman of the Board of Trustees of Teamsters Local 445

Freight Division Pension Fund ("Pension Fund") and Teamsters Local 445 Education and

Training Fund ("E&T Fund") (collectively, the "Funds"), filed this action against Watson

Services, Inc. ("Defendant"), pursuant to the Labor Management Relations Act of 1947

("LMRA"), 29 U.S.C. § 185, and the Employment Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001 *et seq.*, seeking "to collect late payment charges assessed" (Compl.

¶ 1) by the Funds for Defendant's "delinquent . . . contributions for the periods from July 2005 through July 2006" (*id.* ¶ 20).  Before the Court are the Parties' cross-motions for summary judgment.  For the reasons stated herein, Plaintiff's motion is denied, and Defendant's motion is granted in part and denied in part.

## I.  Background

Defendant, a for-profit corporation with its principal place of business in Newburgh, New York, entered into a collective bargaining agreement ("CBA") with Teamsters Local Union 445, International Brotherhood of Teamsters (the "Union"), effective by its terms October 1, 2003 through September 30, 2006.  (Def.'s Statement of Material Facts in Supp. of Def.'s Mot. for Summ. J. ("Def.'s 56.1(a)") ¶¶ 1-2; Compl. ¶¶ 9, 13, 15.)  The Funds, which are jointly administered labor-management trust funds established under the LMRA, are also "multi-employer plans" within the meaning of ERISA.  (Def.'s 56.1(a) ¶¶ 3-4; Compl. ¶¶ 4, 6.)  The Pension Fund is an ERISA "employee pension benefit plan," and the E&T Fund is an ERISA "employee welfare benefit plan."  (Def.'s 56.1(a) ¶¶ 3-4; Compl. ¶¶ 4, 6.)  The CBA required Defendant to "make timely payment of contributions to the Funds."  (Compl. ¶ 15; Answer ¶ 15.)

### A.  Pension Fund

The CBA bound Defendant to make monthly contributions to the Pension Fund, and to do so "by the 15th of the month following the calendar month for which contributions are payable."  (Def.'s 56.1(a) ¶¶ 9-10; Decl. of Seth H. Borden in Supp. of Def.'s Mot. for Summ. J. ("Borden Decl.") Ex. 3-A (CBA) art. 23.)  The CBA further required Defendant to comply with the terms of the Agreement and Declaration of Trust of Local 445 Pension and Welfare Fund (Def.'s 56.1(a) ¶ 12; CBA art. 23), which had been modified by, *inter alia*, a Restated

Agreement and Declaration of Trust dated June 9, 1975 ("1975 Restatement") (Def.'s 56.1(a) ¶¶ 5, 12; Borden Decl. Ex. 3-B (1975 Restatement), at 1), and by Amendments to the Restated Agreement and Declaration of Trust dated June 14, 1988 ("1988 Amended Restatement") (Def.'s 56.1(a) ¶¶ 5, 12; Borden Decl. Ex. 3-C (1988 Am. Restatement), at 1).

Following the 1975 Restatement, and throughout the period during which the CBA was effective, the Agreement and Declaration of Trust provided that the Pension Fund was entitled, under certain circumstances, to require Defendant to make additional payments in the event that it failed to "make proper and timely contributions."  The 1975 Restatement stated in part:

> In addition to any remedies which the Union may have by virtue of any provisions in any Collective Bargaining Agreement with the employer to enforce the payment of the employer contributions to the [Pension] Fund, the Trustees [of the Pension Fund] shall have the power to require any employer who does not make proper and timely contributions as required by its Collective Bargaining Agreement to pay in addition to such contributions:
>
>     (a)    Interest per annum on the amount due at the best interest rate charged by the Bankers Trust Company to substantial and responsible commercial borrowers as of the date of the employer's default in contributions to the Fund provided, however, that such interest shall not be less than 6% per annum.
>
>     (b)    Any expenses incurred in the auditing of such employer's books and records.
>
>     (c)    Where court action has been instituted, attorney's fees.

(Def.'s 56.1(a) ¶ 14; 1975 Restatement art. III, § 14.)  The 1988 Amended Restatement stated in part:

> In addition to any remedies which the Union may have by virtue of any provisions in any Collective Bargaining Agreement with the employer to enforce the payment of the employer contributions to the [Pension] Fund, the Trustees [of the Pension Fund] shall have the power to require any employer who does not make proper and timely contributions as required by its Collective Bargaining Agreement to pay as follows:
>
>     (a)    Any expenses incurred in the auditing of such employer's books and records.
>
>     (b)    In the case of an Employer that fails to make the contributions to

3

> the Fund for which it is obligated, in accordance with the terms and conditions of its obligation, the Trustees may enforce the Employer's obligation, pursuant to ERISA.
>
> (c)    In any matter under subsection (a) the Employer shall pay to the Fund —
>
>     (i)    the unpaid contributions,
>
>     (ii)    liquidation damages equal to the greater of —
>
>         (A)    the amount of interest at the rate of 10% charged on the unpaid contributions, or
>
>         (B)    up to 20% of the unpaid contributions,
>
>     (iii)    reasonable attorney's fees, and
>
>     (iv)    costs and such other legal relief as the court deems appropriate, if the Trustees bring an action on behalf of the Fund pursuant to Sections 502 and 515 of ERISA.

(Def.'s 56.1(a) ¶ 15; 1988 Am. Restatement art. III, § 14.)

For each month from July 2005 through July 2006, Defendant did not pay its required monthly contributions to the Pension Fund by the fifteenth day of the subsequent month, but it did pay all such contributions by the end of September 2006.  (Def.'s 56.1(a) ¶¶ 17-18; Compl. ¶ 17.)  "On October 2, 2006, the [Pension] Fund notified Defendant of late charges due for the periods from July 2005 through July 2006," indicating that Defendant owed the Pension Fund $15,911.53 in late charges.  (Pl.'s Am. Statement of Material Facts in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s 56.1(a)") ¶ 10; Def.'s Resp. to Pl.'s Rule 56.1(a) Statement ("Def.'s 56.1(b)") ¶ 10; Decl. of William D. Frumkin in Supp. of Pl.'s Mot. for Summ. J. ("Frumkin Decl.") Ex. 10 (Oct. 2, 2006 Letter).)  Plaintiff's Complaint alleges that "Defendant was assessed" $14,773.30 for its late payment of contributions to the Pension Fund.  (Compl. ¶ 17.)

By letter dated January 16, 2007, Plaintiff's counsel informed Defendant's counsel of Plaintiff's view of Article III, Section 14 of the 1988 Amended Restatement ("Section 14"). According to Plaintiff's counsel, "it is clear that where subsection (c) refers to 'any matter under subsection (a),' it should have stated 'any matter under subsection (b),'" as "[r]eference to

subsection (a) is nonsensical and contrary to the intent of the document." (Borden Decl. Ex. 8 (Jan. 16, 2007 Letter), at 2; Def.'s 56.1(a) ¶ 22.) The letter stated: "The only reasonable and logical reading is that when events occur as set forth in subsection (b), *i.e.*, '[i]n the case of an Employer that fails to make the contributions to the Fund,' the Employer shall pay to the Fund the liquidated damages set forth in subsection (c)." (Jan. 16, 2007 Letter 2 (alteration in Jan. 16, 2007 Letter).) The letter notified Defendant's counsel that the Pension Fund's Trustees intended to address "this error" at their March 9, 2007 meeting, and invited Defendant's counsel to address the Trustees at the meeting. (*Id.*; Pl.'s 56.1(a) ¶ 12; Def.'s 56.1(b) ¶ 12.) Defendant's counsel declined the invitation. (Pl.'s 56.1(a) ¶ 13; Def.'s 56.1(b) ¶ 13.) According to the "Minutes of the Joint Meeting of the Trustees of Local 445 Welfare and Pension Funds held March 9, 2007," at that meeting Plaintiff's counsel reiterated to the Pension Fund's Trustees the views contained in his January 16, 2007 letter to Defendant's counsel, and "the Trustees unanimously *[d]irected the Fund Administrator to correct the typographical error in the 1988 Amend[ed] . . . Restatement . . . so that the reference to 'any matter under subsection (a)' should be 'any matter under subsection (b).'"* (Frumkin Decl. Ex. 14 (Minutes), at 6-7.)

According to Plaintiff, the Pension Fund "conducted an audit of Defendant's contribution record[,] . . . reviewed Defendant's contribution record for non-compliance[,] and found delinquent contributions." (Aff. of Adrian Huff in Supp. of Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J. ("Huff Aff.") ¶¶ 17-18.) Plaintiff has not provided any details about when this audit was conducted or any documents related to this supposed audit.

### B. E&T Fund

Pursuant to the CBA, Defendant was required to pay contributions to the E&T Fund by

the fifteenth day of the month subsequent to the month in which the contributions were earned. (Compl. ¶ 27; Answer ¶ 28.)  Schedule B of the CBA, entitled "Education and Training Fund," stated:  "In the event of failure by the Employer to make contributions required as provided for in this Article [sic], the Employer shall be responsible for the payment of all legal fees, and monies owed the Fund, with a ten percent (10%) late penalty charge for such delinquency on the amount of unpaid contributions due."  (CBA Schedule B, ¶ G.)  For each month from July 2005 through July 2006, Defendant paid its required contributions to the E&T Fund.  (Compl. ¶ 19; Answer ¶ 20.)  Defendant did not pay all of those contributions within the required time period, however, and was assessed late payment charges.  (Compl. ¶ 19; Answer ¶ 20.)  By November 2007, Defendant had paid the E&T Fund all late payment charges owed for the period June 2005 through April 2006.  (Borden Decl. Ex. 6 (Pl.'s Objs. and Resps. to Def.'s First Req. for Admis. ("Admis.") ¶ 26.)

Plaintiff's Complaint alleges that Defendant was assessed $2,205.11 for its late payments to the E&T Fund for the period July 2005 through July 2006, and that "Defendant has failed, neglected, and refused to pay this amount."  (Compl. ¶ 19.)  According to an October 2, 2006 letter from Carmen M. Hernandez, representing the Funds, to Defendant, the E&T Fund assessed Defendant $169.76 in late charges for May 2006 and $169.15 in late charges for June 2006. (Oct. 2, 2006 Letter.)  According to handwritten notations on a document that Plaintiff identifies as "a facsimile, dated March 10, 2008, from Sharon Molinelli to William F. Cusack III, Esq.," the E&T Fund also assessed Defendant $172.16 in late charges for July 2006.  (Frumkin Decl. ¶ 16; *id.* Ex. 11 (Mar. 10, 2008 Fax), at third unnumbered page.)

However, by letter dated February 4, 2009, Plaintiff notified the Court that Defendant

"has submitted payment in full with regards to any late charges," and that therefore Plaintiff

"withdraws his claim for any late charges with respect to the [E&T] Fund."

C.  Procedural History

Plaintiff filed a Complaint in this Court on June 26, 2007, alleging that Defendant was

liable for $16,978.41 in unpaid "late payment charges on the delinquent Pension and Education

& Training Fund contributions" — $14,773.30 owed to the Pension Fund and $2,205.11 owed to

the E&T Fund.  (Compl. ¶¶ 17, 19-20.)[1]  Plaintiff asserted that Defendant was liable for the full

amount under either ERISA or the LMRA.  (*Id.* ¶¶ 21-29.)  The Parties filed cross-motions for

summary judgment on April 21, 2008.  Oral argument was held on February 4, 2009.

II.  Discussion

A.  Standard of Review

Summary judgment may be granted when it is shown that there is "no genuine issue as to

any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "When ruling on a

summary judgment motion, the district court must construe the facts in the light most favorable

to the non-moving party and must resolve all ambiguities and draw all reasonable inferences

against the movant."  *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).

"When considering cross-motions for summary judgment, a court must evaluate each party's

motion on its own merits, taking care in each instance to draw all reasonable inferences against

---

[1] The case was originally not assigned to any District Judge, and was referred to Magistrate Judge Mark D. Fox for all purposes.  On August 6, 2007, the case was assigned to this Court.  On November 27, 2007, following completion of discovery, the referral to Magistrate Judge Fox was rescinded.

the party whose motion is under consideration." *Make the Road by Walking, Inc. v. Turner*, 378

F.3d 133, 142 (2d Cir. 2004) (internal quotation marks omitted).  A party seeking summary

judgment bears the burden of establishing that no genuine issue of material fact exists.  *See Atl.*

*Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005).  "When the burden of proof

at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a

lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.  In

that event, the nonmoving party must come forward with admissible evidence sufficient to raise

a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v.*

*Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (internal citations omitted).  "When the

moving party has carried its burden under Rule 56(c), its opponent must do more than simply

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted); *see also McPherson v.*

*N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is

insufficient to defeat a motion for summary judgment.").

    B.  ERISA Claim for Late Payment Charges Assessed by Pension Fund

       The Parties have cross-moved for summary judgment on Plaintiff's claim for statutory

damages owed to the Pension Fund pursuant to 29 U.S.C. § 1132(g)(2) ("Section 1132(g)(2)").

Plaintiff contends that, as a matter of law, because Defendant was delinquent in paying

contributions to the Pension Fund and because Plaintiff "brought [the instant] action to enforce

Defendant's obligation to make timely contributions under [29 U.S.C. § 1145 ('Section 1145')],"

Plaintiff is "entitled to statutory damages under [Section 1132(g)(2)]."  (Pl.'s Mem. of Law in

Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem. Supp. Summ. J.") 8.)  According to Plaintiff, the

Pension Fund's "statutory entitlement to liquidated damages exists irrespective of [Defendant's] ultimate payment of the delinquent contributions."  (*Id.*)  Defendant contends that because "[a] suit brought under [Section 1145] to enforce an employer's obligations to pay contributions may not be commenced in the absence of 'unpaid contributions,'" and because it is undisputed that at the time of suit Defendant had paid all monthly contributions owed to the Pension Fund, "Plaintiff's ERISA claims should be dismissed in their entirety."  (Def.'s Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem. Supp. Summ. J.") 5.)

Under ERISA, employers must follow CBA-dictated terms in making contributions to multiemployer pension plans:  "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145.  ERISA specifies the types of relief that should be awarded to such a pension plan in an action to enforce the Section 1145 right to contributions in accordance with CBA terms:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan —
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of —
> > (i) interest on the unpaid contributions, or
> > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

*Id.* § 1132(g)(2).

9

The Second Circuit has held that a plaintiff bringing suit pursuant to Section 1132(g)(2) need not demonstrate that contributions remain unpaid as of the date of judgment. Otherwise, an employer could "escape its statutory liability for interest, liquidated damages or double interest, attorney fees, and costs simply by paying the delinquent contributions" after being sued but "before entry of judgment," a result that "would largely thwart the purpose of § 1132(g)(2) to provide plan fiduciaries with an effective weapon against delinquent employers." *Iron Workers Dist. Council of W. New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506, 1508 (2d Cir. 1995). Thus, "[Section] 1132(g)(2) does not require that a favorable judgment be awarded on each of the four items of relief specified therein. It simply directs that once there is a favorable judgment, the plaintiff is entitled to all the measures of relief not already obtained." *Id.* at 1507.

The issue here, however, is whether a plaintiff can maintain a claim for relief pursuant to Section 1132(g)(2)(B)-(E) when the complained-of delinquent contributions have been fully paid not only prior to judgment but also prior to the filing of the Section 1132(g)(2) action, as is undisputed in this litigation. The Court recently addressed this precise issue in an action by Plaintiff against another employer. *See Huff v. Cruz Contracting Corp.*, No. 07-CV-641, 2009 WL 305933 (S.D.N.Y. Jan. 29, 2009). For the reasons stated in that opinion, *see id.* at *2-5, and set forth below, the Court finds that Defendant is entitled to summary judgment on Plaintiff's claim for statutory damages.

First, the Second Circuit suggested in dicta in *Iron Workers* that a Section 1132(g)(2) claim could not lie unless contributions were unpaid at the time of filing: "[T]he action must be one to enforce the obligation to pay contributions under § 1145, and therefore no such suit can be

commenced in the absence of unpaid contributions . . . ." *Iron Workers*, 68 F.3d at 1507.  As this Court concluded in *Cruz Contracting*, the most natural reading of this dicta is that adopted by Judge Buchwald, who held, in granting summary judgment to plaintiff trustees on their Section 1132(g)(2) claim, that plaintiffs "[could] not recover interest or liquidated damages based on contributions paid in full at the start of th[e] lawsuit," *Trs. of Bldg. Serv. 32B-J Health Fund v. Triangle Servs., Inc.*, No. 05-CV-2546, 2006 WL 3408572, at *3 n.14 (S.D.N.Y. Nov. 22, 2006); *see also id.* at *3 ("Plaintiffs are directed to submit a proposed judgment settling their claims for interest, liquidated damages, attorney's fees and costs, covering *only* those contributions still owed when plaintiffs filed this lawsuit . . . .").  This interpretation is further supported by the Third Circuit, which cited *Iron Workers* as having held that "[Section] 1132(g)(2) remedies apply to all contributions that are unpaid at the time a plan files suit," *UAW Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 289 (3d Cir. 2007).

Second, this conclusion is supported by other courts, including district courts within the Second Circuit, that have held that Section 1132(g)(2) does not apply in these circumstances. *See Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp.*, 258 F.3d 645, 654 (7th Cir. 2001) ("The interest and liquidated-damages provisions of ERISA apply . . . only to contributions that are unpaid at the date of suit . . . ."); *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989) ("Because no contributions were 'unpaid' at the time of this suit, [Section] 1132(g)(2) does not apply."); *Carpenters & Joiners Welfare Fund v. Gittleman Corp.*, 857 F.2d 476, 478 (8th Cir. 1988) (interpreting "the term 'unpaid contributions' . . . to mean contributions unpaid at the time suit was filed, rather than contributions which were delinquent for some time but which were paid up

before suit was filed"); *Finkel v. INS Elec. Servs. Inc.*, No. 06-CV-4862, 2008 WL 941482, at *5 (E.D.N.Y. Apr. 4, 2008) ("[P]laintiff has no right under ERISA to seek damages for those delinquent contributions that were paid prior to the suit being filed . . . ."); *Farrell v. Metro. Relocations Inc.*, No. 95-CV-0557, 1996 WL 19223, at *4 (E.D.N.Y. Jan 11, 1996) ("[S]tatutory liquidated damages are not recoverable when the employer, although delinquent, makes payment prior to commencement of suit.")[2]; *Bd. of Trs. of Local 41, Int'l Bhd. of Elec. Workers Health Fund v. Zacher*, 771 F. Supp. 1323, 1332 (W.D.N.Y. 1991) ("[A]n ERISA plaintiff may not recover statutory liquidated damages . . . pursuant to [Section 1132](g)(2)([C])(ii)[] for delinquent contributions . . . where the contributions, although delinquent, have been paid . . . prior to commencement of suit . . . .").[3]

Accordingly, because it is undisputed that Defendant paid all delinquent contributions to the Pension Fund prior to the filing of this action, the Court denies Plaintiff's motion for summary judgment on its claim for Section 1132(g)(2) damages, and grants Defendant's motion for summary judgment on that claim.

---

[2] The *Farrell* court apparently was not aware of the then-recent decision in *Iron Workers*. *See Farrell*, 1996 WL 19223, at *5 (stating that "[t]he Second Circuit has not addressed th[e] issue" of "whether . . . the statute applies to contributions paid after filing of the suit but prior to judgment").

[3] The Court is sympathetic to Plaintiff's argument that disallowing the recovery of statutory liquidated damages for delinquent contributions paid prior to filing of suit is contrary to ERISA's purpose of encouraging employers to pay promised contributions in a timely manner (Pl.'s Mem. Supp. Summ. J. 8-10), but the Court is bound by the statute and must carefully consider the Second Circuit's dicta interpreting it, *see United States v. Coye*, No. 02-CR-732, 2004 WL 1743945, at *3 (E.D.N.Y. Aug. 4, 2004) ("Although considered *dictum* of a higher court is not binding, it 'must be given considerable weight.'" (quoting *United States v. Bell*, 524 F.2d 202, 206 (2d Cir. 1975))).

C.  Contract Claim for Late Payment Charges Assessed by Pension Fund

The Parties have also cross-moved for summary judgment on Plaintiff's claim that Defendant is contractually liable for late payment charges owed to the Pension Fund.  Defendant asserts that because "the CBA provides no consequences whatsoever for the late payment of Pension Fund contributions" and "the 1988 Amended Restatement provides only for the assessment of liquidated damages under limited circumstances" not present here, there is no genuine issue of material fact as to Defendant's liability.  (Def.'s Mem. Supp. Summ. J. 9-10.) Plaintiff contends that the 1988 Amended Restatement should be interpreted to provide for liquidated damages whenever Defendant fails to make timely payments to the Pension Fund, and that, in the alternative, the limited circumstances referred to by Defendant (an audit) did occur. (Pl.'s Mem. Supp. Summ. J. 14-15.)

1.  ERISA Preemption

The Court must first address the threshold issue of whether the LMRA entitles Plaintiff to state a claim for contractual liquidated damages, or whether ERISA preempts such a claim. Though the Second Circuit has yet to address the issue, Defendant concedes that Plaintiff's claim is not preempted (Def.'s Resp. Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s Opp'n Mem.") 13), and the Court agrees with the other district courts within the Second Circuit that have so held.  *See Finkel*, 2008 WL 941482, at *5 ("Although plaintiff has no right under ERISA to seek damages for those delinquent contributions that were paid prior to the suit being filed . . . , the LMRA provides a statutory basis for recovering damages for those untimely contributions in violation of the CBA." (internal citation omitted)); *Zacher*, 771 F. Supp. at 1332 ("[N]oting that this issue has not been addressed by the Second Circuit, this Court concludes that

13

[Section 1332(g)(2)] does not preempt recovery of contractual liquidated damages for delinquent employee pension and welfare trust fund contributions where, as in this case, such contributions have been paid prior to suit."); *accord Gustafson Constr. Corp.*, 258 F.3d at 654 (holding that fund was "entitl[ed] . . . to enforce [its ERISA] plan's provisions imposing interest and liquidated damages on delinquent contributions" despite the inapplicability of Section 1132(g)(2)); *Mich. Carpenters Council Health & Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 390 (6th Cir. 1991) ("We agree . . . that a fund has a valid claim for late payment and/or audit damages pursuant to its collective bargaining agreements with defendants, not covered by section 1132(g)."). Accordingly, the LMRA authorizes this Court to consider Plaintiff's claim of entitlement to liquidated damages pursuant to the CBA. *See* 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.").

### 2. Choice of Law

The Parties agree that the only possible basis for contractual liquidated damages is Article III, Section 14 of the 1988 Amended Restatement. Section 14(c) provides for liquidated damages "[i]n any matter under subsection (a)," which allows the Pension Fund's Trustees, in the case of an "employer who does not make proper and timely contributions," to collect "expenses incurred in the auditing of such employer's books and records." (1988 Am. Restatement art. III, § 14(a), (c).)

Neither party indicates what body of law should apply to the interpretation of Section 14.

14

The 1975 Restatement provides:  "All questions pertaining to the validity of or construction of this Agreement . . . shall be determined in accordance with the provisions of ERISA."  (1975 Restatement art. IX.)  The 1988 Amended Restatement did not amend this portion of the 1975 Restatement.  Because Plaintiff seeks damages pursuant to 29 U.S.C. § 185, the federal common law of contracts governs the interpretation of the 1988 Amended Restatement.  *See Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003) ("The Supreme Court has interpreted [29 U.S.C. § 185] as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts."  (internal quotation marks omitted) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985))); *cf. Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006) ("An ERISA-regulated plan is construed in accordance with federal common law.").

### 3.  Interpretation of Section 14

Plaintiff argues that the 1988 Amended Restatement contains a typographical error and thus should be interpreted as if Section 14(c) referred to subsection (b) of Section 14 rather than to subsection (a).  (Pl.'s Mem. Supp. Summ. J. 14.)  Defendant contends that the language of Section 14 unambiguously allows for liquidated damages only in the case of an audit, that Plaintiff has offered no evidence of a typographical error to the contrary, and that even if Section 14 is ambiguous it should be interpreted against the Pension Fund.  (Def.'s Mem. Supp. Summ. J. 10-13; Def.'s Opp'n Mem. 14-15.)

"[U]nambiguous language in an ERISA plan must be interpreted and enforced in accordance with its plain meaning.  Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the

context of the entire integrated agreement." *Gibbs*, 440 F.3d at 578-79 (internal quotation marks

omitted) (alteration in *Gibbs*).  "Where contract language is ambiguous, summary judgment is

not appropriate," except that "a court may look to extrinsic evidence to resolve ambiguity in an

ERISA plan, but only when the extrinsic evidence is itself unambiguous."  *Eastman Kodak Co.

v. Bayer Corp.*, 576 F. Supp. 2d 548, 550 & n.2 (S.D.N.Y. 2008).  "Whether language is

ambiguous is a question of law to be resolved by reference to the contract alone."  *Id.* at 551.

Where particular wording in a contract "appears to have been a mere typographical error," where

the party asserting that it is not a typographical error "does not suggest any other possible

reason" for the putative error, and where the error "does not alter the overall meaning of the

clause in any way," the existence of the error will not prevent a court from determining, for

purposes of a motion for summary judgment, that the contract was unambiguous.  *Nippon Fire &

Marine Ins. Co. v. M/V Tourcoing*, 979 F. Supp. 206, 213 (S.D.N.Y. 1997) (holding a contract

provision unambiguous despite the apparent omission of the word "is").

  Plaintiff contends that because it is so clear that the 1988 Amended Restatement's

reference in Section 14(c) to subsection (a) is a typographical error that should actually refer to

subsection (b), the provision is unambiguous and Plaintiff is entitled to contractual liquidated

damages as a matter of law.  (Pl.'s Mem. Supp. Summ. J. 14.)  In support of his conclusion that

the cross-reference is an obvious typographical error, Plaintiff asserts that because "'[ERISA]

does not require an audit to determine the amount of delinquent contributions,'" the reference to

subsection (a) must be "nonsensical and contrary to the intent" of the 1988 Amended

Restatement.  (*Id.* (quoting *N.Y. State Teamsters Conference Pension & Ret. Fund v. Syracuse

Movers, Inc.*, No. 02-CV-733, 2004 WL 2931663, at *7 (N.D.N.Y. Nov. 22, 2004) (alteration in

Pl.'s Mem.)).)  As further evidence that Section 14(c) unambiguously intended to refer to subsection (b) rather than subsection (a), Plaintiff notes that the Pension Fund's Trustees voted in March 2007 to characterize the cross-reference at issue as a typographical error.  (*Id.*)

Plaintiff's argument is unavailing.  The language of Section 14(c) unambiguously refers to subsection (a), and there is nothing in the remainder of the 1988 Amended Restatement itself that indicates that the cross-reference to subsection (a) should not be interpreted in accordance with that plain meaning.  *Cf. Adria Int'l Group, Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 109-10 (1st Cir. 2001) (holding, under Puerto Rican law, that a contract's reference to "'the Initial Option Period as such term is defined in Article Third (a) of the Deed,'" where in fact "Article Third (a) speaks only of an 'exclusive, irrevocable first option . . . , while Article Third (b) of the deed defines the "Initial Option Period,"'" was not ambiguous, because "'Initial Option Period' was a term of art used throughout the deed"; the cross-reference to subsection (a) was therefore unambiguously a typographical error).  Moreover, *Syracuse Movers* — the one case Plaintiff cites in support of his position that Section 14(c) should not be given its plain meaning — does not support Plaintiff's position.  The fact that the absence of an audit does not bar recovery of *statutory* liquidated damages pursuant to Section 1145, as the *Syracuse Movers* court held, has no logical bearing on whether it would be "nonsensical" for the parties to the 1988 Amended Restatement to have made an audit a prerequisite to the Pension Fund collecting contractual liquidated damages.  In fact, as Defendant points out, the agreements at issue in *Syracuse Movers* conditioned the assessment of liquidated damages on the performance of an audit, stating that "in the event an audit disclosed that contributions were not properly made, [the defendant] would be liable for . . . liquidated damages at ten percent of the delinquency amount," *Syracuse Movers*,

2004 WL 2931663, at *3.  (Def.'s Mem. Supp. Summ. J. 11.)  The *Syracuse Movers* court granted the plaintiffs' motion for summary judgment on their claim for statutory liquidated damages, and did not discuss their claim for contractual liquidated damages or indicate in any way that the contractual precondition of an audit was inherently absurd and therefore a typographical error.  *See Syracuse Movers*, 2004 WL 2931663, at *10.

Assuming *arguendo* that Section 14(c)'s cross-reference to subsection (a) is so inherently illogical as to make the provision ambiguous on its face, the Court would then consider Plaintiff's assertion that extrinsic evidence unambiguously mandates Plaintiff's preferred interpretation and entitles Plaintiff to summary judgment.  The sole piece of extrinsic evidence offered by Plaintiff is the fact that the Pension Fund's Trustees voted, over eighteen years after the adoption of the 1988 Amended Restatement, to declare the Section 14(c) cross-reference to be a typographical error.  However, the evidence Plaintiff has produced regarding the Trustees' action in March 2007 is not evidence at all — let alone unambiguous evidence — of the intent of the parties to the 1988 Amended Restatement.  *See Eastman Kodak Co.*, 576 F. Supp. 2d at 550 n.2 ("At summary judgment, a court may look to extrinsic evidence to resolve ambiguity in an ERISA plan, but only when the extrinsic evidence is itself unambiguous.").  Indeed, as Defendant argues, even assuming that the Trustees' current view of Section 14(c) were probative of the drafters' original intention, the Trustees may have had other goals in declaring the cross-reference to be a typographical error, such as furthering the interests of the Pension Fund or "whitewashing their sloppiness in the maintenance of their Trust Agreement language."  (Def.'s 56.1(b) ¶ 14.)

Accordingly, Plaintiff is not entitled to summary judgment on the issue of whether the

18

cross-reference in Section 14(c) should be interpreted as a typographical error or according to its plain meaning. Defendant, on the other hand, is entitled to summary judgment on this issue. As noted above, the language of Section 14 is unambiguous on its face, and nothing in the context of the entire 1988 Amended Restatement makes that language susceptible to alternative reasonable interpretations. There is no suggestion within the four corners of that document that Section 14(c) was supposed to refer to subsection (b) rather than subsection (a). Even if, as Plaintiff contends, it would be illogical for the drafters to condition the award of contractual liquidated damages on the conduct of an audit, that conclusion would not defeat Defendant's motion for summary judgment on this issue. In *United States v. Hodgekins*, 28 F.3d 610 (7th Cir. 1994), the Seventh Circuit found it to be "curious and peculiar" that the IRS contractually restricted itself to reopening its case against a taxpayer's employee only by means of interpleader, "because the government was unlikely to file an interpleader action" in such a case, *id.* at 614. In fact, because interpleader would require the government "to disclaim any interest in the property at stake," "[i]t would be inherently contradictory for the government to interplead [the employee] in an action to settle [the taxpayer's] tax liabilities, if the government disclaimed interest in those liabilities." *Id.* (internal quotation marks omitted). Despite its conclusion that "[t]he IRS meant to condition reopening the case on its decision to 'implead'" — not "interplead" — the employee, the Seventh Circuit affirmed the district court's grant of summary judgment, holding that the district court "could have reasonably concluded that the government had no basis to construe the word 'interplead' to mean 'implead.'" *Id.* at 614-15. Indeed, in the instant case, Defendant argues that it is not at all peculiar for the Pension Fund to "condition the assessment of 'late payment charges' on the conduct of an audit," as "there are other Teamsters Funds who

19

have included just such a provision in their Trust Agreements."  (Def.'s Mem. Supp. Summ. J. 11 (citing *Syracuse Movers*).)  In any event, the contract says what it says, and any later regret the Pension Fund's Trustees may have about the wording in the 1988 Amended Restatement does nothing to help Plaintiff here.

Defendant also points out that the 1975 Restatement, which clearly did *not* condition such assessment on an audit, was affirmatively modified by the 1988 Amended Restatement (*id.* 12-13), and that Plaintiff has not offered any "extrinsic evidence . . . to determine the Fund Trustees' intent in drafting language in 1988" (Def.'s Reply Mem. of Law in Supp. of Def.'s Mot. for Summ. J. 6).  In addition, it is undisputed that Defendant "took no part in the drafting or adoption of the language in . . . the 1988 Amended Restatement" (Def.'s 56.1(a) ¶ 8), that "Plaintiff and the Trustees of the Pension Fund are responsible for the maintenance and amendment of language in . . . the 1988 Amended Restatement" (*id.* ¶ 7), and that for more than eighteen years after the adoption of the 1988 Amended Restatement the Trustees never advised Defendant or any other employer bound by the 1988 Amended Restatement that there were "any errors in [its] drafting or publication" (Admis. ¶¶ 17-18).[4]

The Court thus concludes that the Section 14(c) cross-reference to subsection (a) is facially unambiguous and must be interpreted according to its plain meaning, which is that

---

[4] Although Plaintiff did not explicitly admit the Trustees' sole responsibility for the drafting of the 1988 Amended Restatement (Admis. ¶¶ 13-16), the Court deems this point admitted on account of Plaintiff's failure to file a response to Defendant's Statement of Material Facts pursuant to Local Rule 56.1(a).  *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts . . . will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." (emphases omitted)); *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998) ("We accept as true the material facts contained in defendants' Local Rule [56.1(a)] statement because plaintiff failed to file a response.").

Plaintiff's entitlement to contractual damages depends on whether this case is a "matter under subsection (a)."

### 4.  Audit Pursuant to Section 14(a)

Plaintiff's moving papers contend, in the alternative, that even if Defendant is entitled to summary judgment as to the interpretation of Section 14(c), Plaintiff is still entitled to summary judgment on the Funds' claim for statutory damages, because the Pension Fund did conduct an audit of Defendant's books and records, and therefore "the delinquent contributions are a matter under § 14(a)" of Article III of the 1988 Amended Restatement.  (Pl.'s Mem. Supp. Summ. J. 15.)  Defendant asserts in response that it is entitled to summary judgment on this issue, because the Pension Fund conducted no such audit.  (Def.'s Mem. Supp. Summ. J. 11.)

Plaintiff's Complaint does not allege that there was any audit, and Defendant's attempts to elicit information on the subject through interrogatories were met with objections by Plaintiff. (Borden Decl. Ex. 5 (Pl.'s Resps. to Def.'s First Set of Interrogs.) ¶¶ 4-5.)  The only evidence in the record as to whether an audit took place is Plaintiff's sworn affidavit, filed after the close of discovery and after all briefing on the cross-motions for summary judgment, stating simply that the Pension Fund "conducted an audit of Defendant's contribution record."  (Huff Aff. ¶ 17.) This statement fails to indicate the basis for Plaintiff's personal knowledge of the audit, to reveal any details about the audit, or to specify whether the Pension Fund actually audited books and records kept by Defendant or merely reviewed its own records[5] — though neither Party has

---

[5] At oral argument, when asked by the Court whether there is any other evidence in the record that an audit was conducted, Plaintiff's counsel referred the Court to a letter from Carmen M. Hernandez, representing the Funds, to Defendant, dated March 13, 2006, which states that "[o]ur records show you were delinquent in your Monthly/Weekly payments" (Frumkin Decl. Ex. 5).  However, that letter does not use the word "audit" or make any reference to a review by

offered any evidence as to the meaning of the word "auditing" as used in Section 14(a), and Plaintiff suggests that the word should be interpreted broadly to mean any "review of records" (Pl.'s Mem. of Law in Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J. 9).  Nor is Plaintiff's affidavit accompanied by any documentation related to this purported audit.  Indeed, Plaintiff has apparently not sought to hold Defendant liable for any "expenses incurred in the auditing of [Defendant's] books and records" or introduced any evidence that any expenses were in fact incurred.  Nevertheless, Plaintiff's sworn affidavit states that an audit took place, and nothing on the face of the affidavit indicates that his testimony to that effect would be hearsay or otherwise inadmissible.  This is sufficient to create a genuine issue of material fact as to whether Plaintiff conducted an audit within the meaning of Section 14(a).

## III.  Conclusion

For the reasons stated herein, Plaintiff's motion for summary judgment is denied, and Defendant's cross-motion for summary judgment is granted in part and denied in part.  Plaintiff's claims arising from late payments to the E&T Fund are dismissed, pursuant to Plaintiff's voluntary withdrawal of those claims.  With respect to Plaintiff's claims arising from late payments to the Pension Fund, the Court concludes that while Section 14(c) must, as a matter of law, be read to cross-reference subsection (a) and not subsection (b), there exist genuine issues of material fact as to whether the Pension Fund conducted an audit within the meaning of subsection (a) such that the events underlying this litigation constitute a "matter under subsection (a)" within the meaning of Section 14(c).

---

the Pension Fund of any documents in Defendant's control.

The Clerk of Court is respectfully directed to terminate the pending Motions (Dkt. Nos.

14, 17).

SO ORDERED.

Dated:          February 11, 2009
                White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

23

Service List (By ECF):

William D. Frumkin, Esq.
Sapir & Frumkin LLP
399 Knollwood Road, Suite 310
White Plains, NY  10603
Wfrumkin@sapirfrumkin.com

Seth H. Borden, Esq.
McKenna Long & Aldridge
230 Park Avenue
New York, NY  10169
sborden@mckennalong.com